IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHAEL ADAMS** | § | CIVIL ACTION NO. **4:24-cv-03176** |
| *Plaintiff,* | § | **JURY** |
| | § | |
| **v.** | § | |
| | § | |
| **TEXAS SOUTHERN UNIVERSITY** | § | |
| **AND DR. SARMISTHA** | § | |
| **MAJUNDAR AND ANDREW** | § | |
| **EWOH** | § | |
| *Defendants.* | § | |

## PLAINTIFF MICHAEL ADAMS'S AMENDED COMPLAINT AND REQUEST FOR JURY TRIAL

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE AND JURY:**

Plaintiff Michael Adams, (hereinafter "Plaintiff") complains about the actions of Defendants, Texas Southern University ("TSU"), Dr. Sarmistha Majundar, and Dr. Andrew Ewoh for the following reasons:

**I.**
**INTRODUCTION**

1.       Plaintiff, Dr. Michael Adams, is a Black American who has held a tenured professorship at Texas Southern University (TSU) for more than 40 years.  Plaintiff sues Defendants for age discrimination, race and national origin discrimination, harassment, retaliation, and hostile work environment which caused injury concerning a term or condition of his employment, including but not limited to wrongful reduction in salary, less favorable job assignments, and denial of employment opportunities. All claims brought by Plaintiff arise under state law; specifically, the Texas Commission on Human Rights Act (TCHRA).

## II.
### PARTIES

2.      Plaintiff, Michael Adams, is a Texas resident living in Harris County, Texas.

3.      Defendant, Texas Southern University, is a public educational institution situated in Harris County, Texas. The defendant filed a notice of removal to Federal Court on August 26, 2024.

4.      Defendant, Sarmistha Majumdar, is a Texas resident living in Harris County, Texas. She was served with citation on July 29, 2024, and has not appeared in the case.

5.      Defendant, Andrew Ewoh, is a Texas resident living in Harris County, Texas. He was served with citation on July 29, 2024, and has not appeared in the case.

### III.
### JURISDICTION, VENUE, WAIVER OF IMMUNITY, AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      This action arises out of claims brought under the Texas Commission on Human Rights Act (TCHRA) related to employment discrimination, harassment, and retaliation. This pleading has been amended to remove the inadvertently included federal claims contained in the initial filing. Thus, this action does not involve diversity jurisdiction or a federal question.

7.      The conduct complained of in this suit concerns conscious and deliberate age, race, and national origin discrimination; retaliation; hostile work environment; and harassment by an employer and state official under color of state law for which conduct there is an express waiver of governmental and official immunity. The complaint-of actions of Defendants TSU, Sarmistha Majumdar, and Andrew Ewoh were deliberate, willful, intentional, and clearly unlawful at the time they occurred. Additionally, TSU accepted, and continues to accept, federal grant funding, and thereby has expressly agreed to waive any claims of immunity as to the type of discrimination and

retaliation Plaintiff asserts in this case.[1] *See Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. Coll.*, 959 F.3d 178 (5th Cir. 2020) (governmental entity that accepts federal funds held to have expressly waived sovereign immunity as to discrimination claims).

8.     Finally, Plaintiff has exhausted necessary administrative remedies prior to filing this suit. Plaintiff timely filed his EEOC Charge of Discrimination and has received a Right to Sue Letter.[2]

**IV.**
**BACKGROUND**

9.     Dr. Adams is widely recognized as the most celebrated and well-respected professor in TSU's Department of Political Science. Having been hired in 1983 as an assistant professor of Political Science, he was promoted up the ranks to Full Professor in 1989. Throughout his illustrious career at TSU, Dr. Adams has taught over 300 courses, showcasing his extensive commitment to education and academic excellence. He has also published more than 60 peer-reviewed articles, further solidifying his standing as a distinguished scholar in the field of Political Science.

10.     Beyond his remarkable teaching and research, Dr. Adams has been a visionary force at TSU. Balancing his extensive teaching duties with a commitment to innovation, he founded the Executive Master of Public Administration Program (eMPA). This program, lauded as the most productive graduate program at the university, boasts the largest enrollment at TSU and operates with an annual budget exceeding $1,000,000.  Dr. Adams' ability to spearhead such transformative initiatives while maintaining his teaching excellence underscores his extraordinary professional acumen and contributions to the institution. The eMPA program ran smoothly without

---

[1] *See* **Exhibit 1**: Pages from TSU's Financial Reports showing its receipt and acceptance of federal funds.

any formal complaints or allegations until a recent change in department leadership. Not surprisingly, the single complaint Dr. Adams has received originated from the new department chair, who is the defendant.

11.     Notably, the African administrators comprise 100% of the management of the School of Public Affairs.  Since the new leadership took over, the department has pursued an agenda that appears aimed at pushing out long-standing faculty members, particularly those who are not of the same racial or national origin as the new administrators. Despite his 40 years of dedicated service and tenure, Dr. Adams, a Black American, now finds himself in a position where he must continually fight and claw for any concessions or accommodations from the new leadership, which includes Dr. Sarmistha Majundar (East Indian descent) and Interim Associate Dean Andrew Ewoh (Nigerian descent). This new leadership has created an environment where Dr. Adams faces significant challenges and obstacles, as a result of deliberate and targeted actions based on his age, race, and national origin. This hostile environment has drastically altered his professional experience and well-being.

12.     In fact, it has become so hostile that Dr. Adams has had to file over 100 complaints against representatives of the new leadership just to maintain the *status quo* since the change in leadership has taken place.  The conduct in the department is so bad several members of the TSU Board of Regents personally intervened to stop the mistreatment of Dr. Adams.  One of those interventions led to a signed mediated settlement agreement to address his pay disparity and management issues regarding the budget and control of the eMPA program.  And even that mediated agreement has now been turned upside down by the discriminatory administration.

13.     On or around February 1, 2023, TSU, through this discriminatory administration, subjected Dr. Adams to injuriously different terms and conditions of employment due to his race

and national origin. Specifically, the department chair, Dr. Sarmistha Majundar (East Indian descent), and Interim Associate Dean Andrew Ewoh (Nigerian descent) wrongfully denied Dr. Adams faculty teaching assignments that he was more than qualified to teach. Historically, TSU policy has ensured that high-ranking and senior professors have first come, first serve priority for course offerings, allowing them the right to exercise an option to choose the courses they wish to teach. However, Dr. Adams, who has enjoyed this right throughout his distinguished career, now finds himself in a position where he must beg for these same opportunities. The courses and opportunities he was once entitled to are being given away to less qualified and less experienced colleagues of Nigerian descent. For instance, Dr. Ponmile Onlunilua (Nigerian) was promoted from associate professor to full professor and Jovita Esche (Nigerian) was expedited from part-time to a permanent full-time teaching position quicker than others, all by African/Nigerian administrators who run the department. Subordinate and less-experienced African/Nigerian personnel in the department have been promoted and advanced over Dr. Adams, despite his extensive qualifications and tenure. Notably, no Nigerian or White professor has been similarly mistreated or subjected to these injurious conditions. The new administration has created an environment where Dr. Adams is now forced to fight for the same rights and opportunities he once freely exercised. These actions, which also violate the fully executed settlement agreement that Dr. Adams has with TSU (referred to supra), are based on deliberate and targeted discrimination against Dr. Adams as a Black American.

14.     Additionally, on or around October, 2023, TSU subjected Dr. Adams, who is over 40 years old, to different terms and conditions of employment due to his age. Despite being one of the most senior and highly ranked professors at TSU, a status that traditionally guarantees first preference for summer teaching assignments, Dr. Adams was unjustly denied the opportunity to

teach summer courses. These courses were instead assigned to a younger white man and a younger individual of Nigerian descent, both of whom lacked Dr. Adams's extensive qualifications and experience. The younger colleagues, with significantly fewer academic and professional accomplishments, were favored over Dr. Adams, highlighting a clear bias based on age. The denial of Dr. Adams's rightful teaching assignments and the preferential treatment of these less qualified, younger individuals demonstrate a deliberate pattern of age discrimination. This discriminatory action has forced Dr. Adams to contend with an unjust professional reality where his extensive experience and seniority are constantly disregarded due to his age.

15.     The hostile treatment escalated in October of the same year when Dr. Adams discovered that the Interim Department Chair and the Department Chair had filed an unwarranted audit request with the TSU foundation. This audit, initiated without any prior conversation to mediate or resolve concerns, was a clear attempt to strip Dr. Adams of his leadership of the eMPA program, seek his termination, and replace him with a younger, less experienced staff member. The audit, which resulted in no findings of wrongdoing, underscores the baseless and retaliatory nature of these actions.

16.     Moreover, TSU refused to pay Dr. Adams for teaching summer school classes, while other administrators teaching similar courses were compensated. This refusal, coupled with the denial of teaching assignments and the baseless audit, exemplifies the ongoing harassment and hostile work environment Dr. Adams faces. These actions have resulted in significant injuries concerning the terms and conditions of his employment, including a wrongful reduction in salary, less favorable job assignments, and denial of employment opportunities.

17.     This deliberate pattern of discrimination and retaliation, driven by Dr. Adams's age, race, and national origin, has drastically altered his professional experience and well-being. The

cumulative effect of these hostile actions has created an untenable work environment that no professor, especially one with Dr. Adams's distinguished career and contributions, should have to endure.

**V.**
**CAUSES OF ACTION**

18.     For purposes of all the following causes of action, Plaintiff incorporates by reference each and all of the foregoing facts and notice allegations in support of the following federal and state law causes of action. All conditions precedent to bring the following claims have been satisfied and fulfilled:

### A) TCHRA RACE AND NATIONAL ORIGIN DISCRIMINATION

19.     Defendants intentionally discriminated against Plaintiff because of his race and national origin, a protected class, in violation of the Texas Labor Code § 21.051. Plaintiff, Dr. Adams, a Black American, was denied teaching assignments and opportunities that he was entitled to based on his qualifications and seniority. Instead, these opportunities were given to less qualified and less experienced colleagues of Nigerian descent.

20.     This deliberate pattern of discrimination has negatively impacted the terms and conditions of Dr. Adams's employment at TSU, resulting in serious injuries and damages. Dr. Adams seeks redress for the wrongful conduct of Defendants.

### B) TCHRA AGE DISCRIMINATION

21.     Defendants intentionally discriminated against Plaintiff because of his age, a protected class, in violation of the Texas Labor Code § 21.101. Despite his extensive experience and seniority, Dr. Adams was unjustly denied the opportunity to teach summer courses, which were instead assigned to younger, less qualified individuals.

22.     Such age-based discrimination interfered with the terms and conditions of Dr. Adams's employment, causing serious injuries and damages. Dr. Adams seeks redress for the wrongful conduct of Defendants.

### C) TCHRA HARASSMENT, RETALIATION, AND HOSTILE WORK ENVIRONMENT

23.     Defendants created a hostile work environment in violation of the Texas Labor Code § 21.055. Since the new leadership took over, Dr. Adams has been subjected to ongoing harassment and retaliation, which has severely altered and affected the terms and conditions of his employment. This includes the filing of a frivolous audit, denial of compensation for summer teaching, and other retaliatory actions that create a hostile work environment.

24.     As a result of Defendants' actions, Dr. Adams has suffered significant injuries and damages. He seeks redress for the harassment, retaliation, and hostile work environment perpetuated by Defendants.

### VI.
### EQUITABLE RELIEF

25.     Plaintiff seeks an injunction to prevent the Defendant from further breaching the contract. The Defendant's continued breach will likely cause irreparable harm to the Plaintiff, including loss of business opportunities and damage to reputation, which cannot be adequately compensated by monetary damages alone.

### VII.
### JURY DEMAND

26.     Plaintiff demands a jury trial.

### VIII.
### ATTORNEY'S FEES

27.     Defendants' actions and conduct as described herein, and the resulting damages and

losses to Plaintiff, have necessitated Plaintiff retaining the services of the lawyers listed below to investigate, initiate, and prosecute the claims in this lawsuit.  Plaintiffs seek recovery of reasonable and necessary attorneys' fees under 42 U.S.C. § 1983 and 1988 and any other applicable law or statute, as well as expenses, court costs, and expert witness fees.

## IX.
## PRAYER AND DAMAGES

28.    As a direct and proximate result of the Defendants' conduct, Plaintiff seeks judgment against Defendants for  damages suffered in the following particulars:

- Lost wages in the past and future;

- Lost health insurance and related benefits in the past and future;

- Loss of pension and/or retirement benefits;

- Emotional suffering in the past and future;

- Stigma damages;

- Mental anguish damages;

- Compensation for unpaid summer school classes;

- Punitive damages;

- Attorneys' fees, costs, and expenses;

- All equitable relief to the extent allowed in law or at equity to which Plaintiff may show himself justly entitled; and

- Plaintiff asserts that his individual compensatory damages are between $1,000,000.00 and $2,500,000.00, plus punitive damages.

Respectfully submitted,

**THE HALL LAW GROUP, PLLC**

*/s/ Benjamin L. Hall, III*
**Benjamin L. Hall, III**
Attorney-in-Charge
State Bar No. 08743745
Federal Bar No. 8787
530 Lovett Boulevard
Houston, Texas 77006
(713) 942-9600 Office
(713) 942-9566 Facsimile
Bhall@thlf.us
E-Service: MyTeam@thlf.us

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2024, all counsel of record were served with a copy of

the foregoing document via ECF.

*/s/ Benjamin L. Hall, III*
**Benjamin L. Hall, III**